UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

STRIKE 3 HOLDINGS, LLC.,       )
                                )
            Plaintiff,          )
                                )
        v.                      )    Civil Action No. 1:21-cv-1140 (RDA/TCB)
                                )
JOHN DOE, subscriber assigned IP address )
71.178.14.51,                   )
                                )
                                )
            Defendant.          )
_____ )

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Plaintiff Strike 3 Holdings, LLC's ("Plaintiff" or

"Strike 3") Motion for Entry of Default Judgment Against Defendant John Doe ("Defendant")

and accompanying memorandum. (Dkt. 28.)[1] For the reasons articulated below, the undersigned

recommends that Plaintiff's Motion be GRANTED.

                    I.    BACKGROUND

**A.    Procedural Posture**

Plaintiff filed this lawsuit on October 7, 2021, asserting claims under the United States

Copyright Act of 1976 against Defendant. (Dkt. 1.) The Court granted Plaintiff leave to serve a

third party subpoena on October 13, 2021 and granted Plaintiff an extension to effectuate service

---

[1] The relevant filings before the Court include Plaintiff's First Amended Complaint-Action for Damages for Property Rights Infringement ("Am. Compl.") (Dkt. 11); Plaintiff's Motion for Entry of Default Judgment Against Defendant Wayne Arrington, Jr. ("Mot. Default J.") (Dkt. 31); Plaintiff's Memorandum of Law in Support of Motion for Entry of Default Judgment Against Wayne Arrington, Jr. ("Mem. Supp.") (Dkt. 31-1); Declaration of Dawn M. Sciarrino in Support of Plaintiff's Motion for Entry of Default Judgment Against Defendant Wayne Arrington, Jr. ("Decl. Sciarrino.") (Dkt. 31-3); and all attachments and exhibits submitted with those filings.

1

on January 6, 2022. (Dkts. 7, 10.) After successfully locating and identifying the Defendant,

Plaintiff filed its Amended Complaint on March 7, 2022. (Dkt. 11.) On March 8, 2022, the Court

granted Plaintiff's second request for an extension to effectuate service. (Dkt. 18.) Plaintiff filed

an Affidavit of Service on April 25, 2022, demonstrating that Plaintiff was personally served

with Summons and a copy of the Amended Complaint. (Dkt. 21.) On June 3, 2022, Plaintiff filed

a Motion for Entry of Clerk's Default Pursuant to Fed. R. Civ. P. 55(a). (Dkt. 22.) The

Honorable District Judge Rossie D. Alston subsequently granted the motion and directed the

Plaintiff to file a motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)

and to notice a hearing before the undersigned. (Dkt. 25.)

    The Clerk entered default as to Defendant John Doe on June 3, 2021. (Dkt. 26.) On June

17, 2022, Plaintiff filed this Motion for Default Judgment, the accompanying memorandum in

support, and a notice of hearing for July 15, 2022. (Dkts. 28-33.) At the hearing before the

undersigned, no representative for Defendant appeared or responded in any way. (Dkt. 38.) The

undersigned took the matter under advisement to issue this Report and Recommendation.

**B.    Jurisdiction and Venue**

    Before the Court can render default judgment, it must have (1) subject-matter

jurisdiction, (2) personal jurisdiction, and (3) proper venue.

    1) Subject-Matter Jurisdiction

    First, the undersigned finds that this Court has proper subject-matter jurisdiction. Subject-

matter jurisdiction must be proper as to each claim in federal court. A federal district court has

original jurisdiction in a civil action "arising under the Constitution, laws, or treaties of the

United States." 28 U.S.C. § 1331. Additionally, U.S.C. § 1338(a) grants federal courts original

jurisdiction over any civil action arising under U.S. copyright law. 28 U.S.C. § 1338(a). Here,

2

Plaintiff brings a claim under the Copyright Act, a federal statute. (Am. Compl. ¶¶ 68-73.) Therefore, the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and § 1338(a) as to Count I, Direct Copyright Infringement. The undersigned accordingly finds that this Court has subject-matter jurisdiction over of Plaintiff's claim.

2) Personal Jurisdiction

Second, the undersigned finds that this Court has personal jurisdiction over Defendant. The inquiry for personal jurisdiction requires either specific jurisdiction "based on conduct connected to the suit" or general jurisdiction based on "continuous and systematic" activities in the forum state. *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012) (quoting *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002)). A court has general jurisdiction over an individual defendant who is domiciled in the forum state. *Goodyear Dunlop Tires Operation, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Here, Defendant is a Virginia resident and was personally served with the Summons and a copy of the Amended Complaint. (Am. Compl ¶ 9; Mem. Supp. at 2; Dkt. 21.) Accordingly, the undersigned finds that this Court has general personal jurisdiction over the Defendant.

3) Venue

Third, the undersigned finds that venue in this Court is proper. Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" and in a judicial district where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. §§ 1391(b)(1)-(2). Here, Plaintiff alleges that venue is proper in the Eastern District of Virginia because Defendant resides in this District and a substantial part of the events or omissions giving rise to this lawsuit occurred in the District. (Am. Compl. ¶ 10.) Therefore, the undersigned finds that venue is proper under 28

3

U.S.C. § 1391(b).

### C.     Service of Process

Before the Court can render default judgment, it must be satisfied that the defaulting

party has been properly served. Defendant John Doe resides in Virginia at a sealed address. (*See*

dkt. 36.) Federal Rule of Civil Procedure 4(e)(1) allows a plaintiff to serve an individual by

"following state law for serving a summons in an action brought in courts of general jurisdiction

in the state where the district is located or where service is made." Fed. R. Civ. P. 4(e)(1). A

plaintiff may serve an individual by several means. Fed. R. Civ. P. (4)(e)(2). A plaintiff, for

example, may "deliver[] a copy of the summons and of the complaint to the individual

personally." Fed. R. Civ. P. 4(e)(2)(A). Here, Plaintiff was personally served with a  copy of the

summons and Amended Complaint on April 4, 2022. (Dkts. 21, 22-1.) Accordingly, the

undersigned finds that Plaintiff properly served Defendant via personal service pursuant to

Federal Rule of Civil Procedure 4(e)(1).

## II. FINDINGS OF FACT

Upon a full review of the pleadings and record in this case, the undersigned finds that

Plaintiff has established the following facts.

### A.     Plaintiff's Award-Winning Copyrights.

Plaintiff Strike 3 offers subscription-based websites where paid subscribers access adult

content. The sites have some of the highest subscriber rates in the world and have won numerous

awards, such as "best cinematography," "best new studio," and "adult site of the year." (Am.

Compl. ¶ 14.) In addition to its sites, Strike 3 licenses its motion pictures to popular broadcasters

and sells adult DVDs in the United States. (Am. Compl. ¶ 13.) Strike 3's success has enabled

adult studios to invest in better content and to treat performers as artists. (Am. Compl. ¶ 15.) But

Strike 3 is also plagued by widespread Internet piracy. (Am. Compl. ¶ 16.) Strike 3's content is some of the most infringed popular entertainment content on BitTorrent websites, and its works are among some of the most pirated in the world. (*Id.*)

**B.     Defendant's Infringing Use of the BitTorrent File Distribution Network.**

The BitTorrent File Distribution Network ("BitTorrent") is a system that enables the rapid distribution of large Internet files. (Am. Compl. ¶ 17.) BitTorrent users simultaneously download and upload pieces of files from the computers of other users in the network. (*Id.*) Users work together to distribute large files, such as Plaintiff's motion pictures filmed in 4kHD, without burdening a single computer and/or network. (Am. Compl. ¶ 18.)

To share a movie, the user first creates a .torrent file from the original movie file, breaking down the original file into numerous, smaller pieces. (Am. Compl. ¶ 19.) The original movie files being shared through the network have a hash value, which is a unique, alpha-numeric value of fixed length used to identify the file data. (Am. Compl. ¶ 20.) Hash values are assigned to data by a cryptographic algorithm. (Am. Compl. ¶ 21.) Any underlying change to the data will change the correlating cryptographic hash. (*Id.*) A user must obtain the .torrent file for the specific movie file that has been broken down to find and reassemble the original movie. These .torrent files contain metadata, and when this data is put into the cryptographic algorithm, it produces the "Info Hash" hash value. (Am. Compl. ¶ 23.) The BitTorrent protocol uses the "Info Hash" to identify and locate the desired file pieces of the original movie across the BitTorrent network. (Am. Compl. ¶ 24.) Users collect and download the pieces of the movie file by using the Info Hash in the .torrent file metadata. (Am. Compl. ¶ 25.) Once every individual piece is downloaded, the movie file is reassembled in its original, playable form. (Am. Compl. ¶ 26.)

Plaintiff developed an infringement detection system "VXN Scan," which it owns and operates. (Am. Compl. ¶ 27.) Using VXN Scan, Plaintiff discovered that Defendant used the BitTorrent network to download and distribute Plaintiff's copyrighted motion pictures without authorization. (Am. Compl. ¶ 28.) VXN Scan established a direct TCP/IP connection with Defendant's IP address while he was using the BitTorrent network. (Am. Compl. ¶ 29.) VXN Scan then downloaded one or more pieces of digital media files from Defendant. (Am. Compl. ¶ 30.) Plaintiff identified these pieces of files as portions of Plaintiff's motion pictures. (Am. Compl. ¶ 31.)

Plaintiff was able to make these identifications because VXN Scan searched for and obtained the .torrent files claiming to be infringing copies of Plaintiff's works and downloaded the complete digital media files correlating to those .torrent files. (Am. Compl. ¶ 32.) Plaintiff then took the complete digital media files and compared them to it's copyrighted works. (Am. Compl. ¶ 33.) Through this process, Plaintiff verified that the digital files from Defendant's IP address contain a digital copy of a motion picture that is identical or strikingly similar or substantially similar to Plaintiff's copyrighted works. (Am. Compl. ¶ 34.) VXN Scan then used the "Info Hash" value, contained within the metadata of the .torrent file correlated with a media file deemed identical to a copyrighted work, to download a piece of the same media file from Defendant using the BitTorrent network. (Am. Compl. ¶ 35.) VXN Scan did not and is not able to upload content to the BitTorrent network. (Am. Compl. ¶ 36.)

Overall, the VXN Scan captured Defendant's sharing of thirty-seven (37) digital media file pieces that are identical or substantially similar to Plaintiff's works. (Am. Compl. ¶ 37.) The VXN Scan recorded these multiple transactions in a PCAP file. (Am. Compl. ¶¶ 38-39.) Exhibit A lists each of Plaintiff's works infringed per transaction, along with the time and date of the

transaction, the Info Hash from the corresponding .torrent file metadata, the media files' File

Hash value, and the copyright information. (Am. Compl. ¶¶ 40-42.) Defendant downloaded,

copied, and distributed these copyrighted works without Plaintiff's authorization, and this

infringement continues. (Am. Compl. ¶¶ 43-45.)

**C.     Discovery Revealed that Defendant is the Infringer.**

Plaintiff was granted leave to serve a third-party subpoena on the ISP, which identified the IP

address 71.178.14.51 as belonging to Defendant and located at his residence. (Am. Compl. ¶ 60.)

Defendant lived at that address when the infringing transactions occurred. (Am. Compl. ¶ 61.)

Plaintiff logged "Additional Evidence," which shows Defendant's infringement of other

copyrights not owned by Plaintiff correlating to Defendant's age, education, skillset, profession,

and interests. (Am. Compl. ¶¶ 62-63.) Defendant continues to use the BitTorrent network to

download and share copyrighted works despite receiving notifications from his ISP Verizon

alerting him of his infringement. (Am. Compl. ¶¶ 64, 66.) Verizon identified four separate IP

addresses located at Defendant's residence used to infringe Plaintiff's works. (Am. Compl. ¶ 65.)

### III. EVALUATION OF PLAINTIFF'S COMPLAINT

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the

plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736

(E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)).

However, the defaulting party is not deemed to admit conclusions of law or "allegations

regarding liability that are not well-pleaded." *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d

531, 540 (D. Md. 2011) (internal quotation marks and citations omitted). Consequently, before

entering default judgment, the Court must evaluate the plaintiff's complaint against the standards

of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim

upon which relief can be granted. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) (citations omitted).

Plaintiff's Amended Complaint alleges one count, Copyright Infringement, against Defendant (Count I). (*See* Am. Compl. ¶¶ 68-73.) The Copyright Act provides exclusive rights to owners of copyrighted works. *See* 17 U.S.C. §§ 101, 106(1), (3)-(5), 501. In other words, an owner has the exclusive right to reproduce the works; distribute copies to the public by sale, rental, lease, lending, or other transfer of ownership; publicly perform the works; or display the works. *See id.* One who violates any of the copyright owner's exclusive rights is considered an infringer. *See id.* And to state a claim of copyright infringement, a plaintiff must show (1) its ownership of a valid copyright for the allegedly infringed material and (2) "copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (citation omitted).

1) Plaintiff Owns a Valid Copyright.

First, Plaintiff has sufficiently shown that it owns valid copyrights for the works at issue. Plaintiff alleges that it owns the copyright for thirty-seven (37) motion picture works. (*See* Am. Compl. Ex. A.) Copyright certificates create a presumption of valid ownership. 17 U.S.C. § 410(c). As shown in Exhibit A, each of these thirty-seven works identified by the VXN Scan is registered with the United States Copyright Office. (*Id.*)

2) Defendant Infringed Plaintiff's Exclusive Rights.

Second, Plaintiff alleges that Defendant willfully violated the Plaintiff's exclusive rights to the works through his unauthorized use of the BitTorrent protocol. 17 U.S.C. § 106(1), (3)-(5), 501; (*See* Am. Compl. ¶¶ 68-73.) Copyright infringement exists where file-sharing software and protocols (such as BitTorrent) are used to download works and reproduce, distribute, display, or

8

publicly perform works without the copyright-holder's permission. *See, e.g.*, *ME2 Prods. v. Mason*, No. 3:17-cv-00058, 2018 U.S. Dist. LEXIS 49985, at *2 (E.D. Va. Mar. 26, 2018) ("[T]he plaintiff pleads the elements of infringement by alleging that it owned a valid copyright, and that the defendant copied and distributed the copyrighted material through a BitTorrent network.").

Copyright holders have the exclusive right to make copies of or reproduce their works. § 106(1). As outlined in detail above, the BitTorrent network used by Defendant involves the sharing of file "pieces" to recreate and distribute Plaintiff's motion pictures. This replication violates Copyright Plaintiffs' exclusive rights to reproduce their Works. *See* § 106(1). Copyright holders also possess an exclusive right to distribute their works. *See* § 106(3). A defendant violates a holder's distribution rights when that defendant disseminates the work or makes the work generally available to the public. *See Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 203 (4th Cir. 1997). The streaming of video content has been held to violate the "public performance" rights under § 106(4). *Am. Broad. Cos., Inc. v. Aereo, Inc.*, 573 U.S. 431 (2014). Using the BitTorrent protocol, Defendant enables the downloading and streaming of copies of the Plaintiff's motion pictures, which results in the unauthorized distribution, public performance, and display of the motion pictures. *See* §§ 106(3)-(5). Accordingly, the undersigned finds that Plaintiffs have sufficiently pled an infringement claim under the Copyright Act.

IV. REQUESTED RELIEF

Plaintiff requests that the Court award (1) statutory damages under the Copyright Act, (2) injunctive relief under the Copyright Act, and (3) costs incurred in bringing this action.

## A.      Statutory Damages Under the Copyright Act.

The Copyright Act entitles a copyright owner to recover "an award of statutory damages for all infringements involved in the action." 17 U.S.C. §§ 504(a)(2), (c)(1). Should a copyright owner qualify for statutory damages, the Copyright Act affords courts discretion to determine the proper amount of damages. *See EMI Apr. Music, Inc. v. White*, 618 F. Supp. 2d 497, 508 (E.D. Va. 2009). "[W]ith respect to any one work," statutory damages may total "a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). Upon a finding of willful infringement, however, the Court "may increase the award of statutory damages to a sum of not more than $150,000." *Id.* § 504(c)(2).

Infringement is willful for enhanced statutory damages purposes "when a defendant acted with actual or constructive knowledge that his actions constituted infringement or recklessly disregarded a copyright holder's rights." *Tattoo Art, Inc. v. TAT Int'l, LLC*, 794 F. Supp. 2d 634, 649 (E.D. Va. 2011) (citing *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F. 3d 789, 799 (4th Cir. 2001)). It has long been established law that for statutory damages to be "an effective sanction for enforcement of the copyright policy," they must be awarded "not merely [to] compel[] restitution of profit and reparation for injury but also . . . to discourage wrongful conduct." *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952); *see also Graduate Mgmt. Admission Council v. Raju*, 267 F. Supp. 2d 505, 511 (E.D. Va. 2003).

Here, Plaintiff pled in the Amended Complaint and further demonstrated in its supporting memorandum that Defendant willfully infringed on Plaintiffs' copyrighted Works. (*See* Am. Compl. ¶¶ 62-66; 68-73.) Noting that it could request up to $150,000 per work, Plaintiff only requests the minimum statutory damages award $750.00 per work (here, thirty seven) for a total

of $27,750. [2] (Mem. Supp. at 4.) Because of Defendant Doe's willful infringement, the undersigned finds that Plaintiffs' request for $27,750 in damages is reasonable.

### B.      Injunctive Relief Under the Copyright Act.

The Plaintiff seeks injunctive relief under the Copyright Act. *See* 17 U.S.C. § 502(a). Specifically, Plaintiff requests that the Court permanently enjoin Defendant from directly, contributorily, or indirectly infringing on Plaintiff's works and order Defendant to destroy all unauthorized copies that Defendant has downloaded. (Mem. Supp. 9-10.) The Copyright Act provides that a court may grant injunctive relief to prevent the infringement of copyrights. *See* 17 U.S.C. § 502(a) ("Any court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.").

To obtain a permanent injunction in the Fourth Circuit, a plaintiff must show:

(1) that it has suffered an irreparable injury;
(2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
(3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
(4) that the public interest would not be disserved by a permanent injunction.

*Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). The undersigned determines that

---

[2] This total comprises damages of $750 per work, which is the statutory minimum for copyright violations. *See* 17 U.S.C. § 504(c)(2). Similar statutory damages have been awarded in like cases. *See Zomba Recording v. Nguyen*, No. 1:08-cv-1065 (LMB/TCB), 2009 WL 4030751, at *5 (E.D. Va. Nov. 17, 2009) (finding a request for $750 per work to be reasonable); *Capitol Records, LLC v. McEwan*, No. 5:08-cv-00473-BR, 2009 WL 103611, at *2 (E.D.N.C. Jan. 13, 2009) (finding an award of the statutory minimum to be reasonable); *UMG Recordings, Inc. v. Sanchez*, No. C 06-03457JSW, 2007 WL 485955, at *2 (N.D. Cal. Feb. 12, 2007) ("Because plaintiffs seek only the minimum statutory damages available under the statute, the request is ascertainable and reasonable.").

permanent injunctive relief is appropriate against Defendant because the above four elements are satisfied.

*First*, the Plaintiff has demonstrated that it has suffered—and will continue to suffer—irreparable harm. In copyright cases, "[i]rreparable injury [can be] derive[d] from the nature of copyright violations, which deprive the copyright holder of intangible [and] exclusive rights." *Christopher Phelps*, 492 F.3d at 544. Here, Defendant has downloaded and distributed Plaintiff's works globally through the BitTorrent network. As Defendant continues to use the BitTorrent network to distribute these works, the extent and breadth of this distribution is impossible to quantify. Therefore, monetary damages inadequate as Defendant's conduct will continue to harm Plaintiff in the future absent an injunction. Therefore, Plaintiff has been irreparably harmed and that injunctive relief is appropriate.

*Second*, other remedies at law are inadequate to compensate Plaintiff. Despite receiving proper service of process, Defendant failed to respond in any way to this lawsuit. This lack of an appropriate response demonstrates a near certainty of continuing copyright infringement and makes it impossible to determine the actual profits and damages in the case. Further, no amount of money can fully compensate Plaintiff for this ongoing and worldwide BitTorrent infringement.

*Third*, the only "hardship" Defendant would experience from a permanent injunction would be the requirement to follow clearly established copyright law. The undersigned accordingly finds that this third factor easily weighs in favor of granting injunctive relief, as Plaintiff's hardships (including infringement of its legal rights) far outweigh any purported hardship that Defendant may face.

*Finally*, the public interest favors an injunction. The public benefits from the judicial

12

enforcement of copyrights because it preserves their legal integrity and protection of creativity. *See EMI Apr. Music*, 618 F. Supp. 2d at 511. Furthermore, granting injunctive relief in this matter would do nothing to "disserve []" the public. *See Christopher Phelps*, 492 F.3d at 543. Here, an injunction would enforce Plaintiff's legal rights and maintain the integrity of its copyrighted works. The undersigned finds that, because of Defendant's continuing infringement and his failure to respond to this lawsuit, injunctive relief against Defendant is appropriate and the best means to prevent future harm to Plaintiff.

Accordingly, the undersigned finds that an injunction is appropriate in this case.

**C.    Costs.**

Lastly, the Plaintiff requests that the Court award the costs incurred in bringing this action. The Copyright Act authorizes courts to award "full costs" to a successful plaintiff. 17 U.S.C. § 505. Costs include reasonable out-of-pocket expenses the attorney incurred in pursuing legal services that would typically be charged to a fee-paying client. *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988). Courts routinely award costs to a successful plaintiff on default judgment, especially when the defendant committed willful copyright infringement. *See, e.g., Malibu Media, LLC v. Redacted*, 2016 U.S. Dist. LEXIS 89165, at *14 (D. Md. July 11, 2016). Here, Plaintiff's counsel declares that Plaintiff incurred $400 in costs by paying the filing fee for this action. (Decl. Sciarrino ¶ 8.) Because Plaintiff adequately pled that Defendant willfully infringed its copyrights, an award of costs is appropriate here. Accordingly, the undersigned finds that Plaintiff is entitled to an award of $400.00 in costs.

## V. RECOMMENDATION

For the reasons stated above, the undersigned recommends that this Court enter default judgment against Defendant on Count I. Specifically, the undersigned recommends that the

Court award Plaintiff $27,750 in statutory damages pursuant to 17 U.S.C. § 504(c)(1) and $400

in costs pursuant to 17 U.S.C. § 505. The undersigned further recommends that the Court enter

an injunction:

> [p]ermanently enjoining Defendant from directly, contributorily or
> indirectly infringing Plaintiff's rights under federal or state law of
> Plaintiff's copyrighted works (the "Works"), including, without
> limitation, by using the internet, BitTorrent or any other online
> media distribution system to reproduce (e.g., download) or
> distribute the Works, or to make the Works available for
> distribution to the public, except pursuant to a lawful license or
> with the express authority of Plaintiff; and

> [o]rdering that Defendant destroy all copies of Plaintiff's Works
> that Defendant has downloaded onto any computer hard drive or
> server without Plaintiff's authorization, and shall destroy all copies
> of the Works transferred onto any physical medium or device in
> Defendant's possession, custody, or control.

(Mem. Supp. at 9-10.)

## VI. NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to

28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within

fourteen (14) days of its service. Failure to object to this Report and Recommendation waives

appellate review of any judgment based on it.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

August 4, 2022
Alexandria, Virginia

14